IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**GEORGE V. ACOSTA, et al.,**

    **Plaintiffs,**

vs.                                                             No. CIV 99-826  LCS

**CYPRUS AMAX MINERALS COMPANY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes on the Defendant's Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, filed June 21, 2000 (*Doc*. 20). The Court, having considered the arguments of counsel and the applicable law, finds Defendant's Motion is well taken and it will be granted.

### I. FACTUAL BACKGROUND

Amax Potash Corporation (hereinafter "Amax Potash") was a Delaware corporation that maintained offices in Denver Colorado. Amax Potash was a wholly owned subsidiary of the Defendant Cyprus Amax Minerals Company's (hereinafter "Amax").[1] Prior to November 1, 1986, Amax operated a potash mine in Eddy County, New Mexico. In order to mine potash ore, private organizations must lease the land that contains the mineral. Land containing Potash is considered

---

[1] In 1993, Cyprus Amax Minerals Company merged into a company previously known as Amax, Inc. Cyprus Amax Minerals Company is essentially the successor entity of Amax, Inc and has substituted itself for Amax, Inc. with references to any issues involved in this action.

public land owned by the United States which is operated and administered by the Bureau of Land Management (hereinafter "BLM") of the Department of Interior. Amax held mineral leases issued by the BLM. These leases were issued pursuant to the Federal Mineral Leasing Act. 30 U.S.C. §281 *et. seq*.

Amax adopted and implemented a severance pay policy in April of 1987, which was contractually binding upon the corporation and separately affected each of its employees. The policy, in effect, stated that employees were entitled to severance pay when their jobs were eliminated or reconstructed in the event of reductions in force, technological changes or other business or economic reasons.

On November 1, 1986, Amax assigned the federal leases to mine potash ore to Amax Potash. Amax subsequently submitted, in writing, a statement of Amax Potash's qualifications to the BLM.

In 1992, Amax sold its stock in Amax Potash to Horizon Gold Corporation (hereinafter "Horizon"). Horizon subsequently changed the name of Amax Potash Corporation to Horizon Potash Corporation (hereinafter "Horizon Potash"). Simultaneously with the sale of the stock and the mine, Amax assigned the federal leases to Horizon Potash.

The BLM received an application for Record Title Assignment from Amax Potash to Horizon Potash on June 8, 1992. The BLM did not approve the assignment because Horizon Potash was not able to obtain a new bond as part of transfer requirements.

Horizon Potash then closed the potash mine on June 11, 1993, and released the employees from their employment.

On September 13, 1993 an Area Manager of the BLM issued an "Official Order" stating that Amax "shall continue to be responsible for the performance of any obligation under the permit or lease until the effective date of the approval of the assignment." See Pl. Ex. 5. Amax appealed the Area Manger's Order.

Thereafter, on February 4, 1994, the District Manager of the BLM upheld the Area Manager's order. The decision stated that Amax could be potentially responsible for obligations arising under the potash leases. The decision also outlined various maintenance procedures for Amax to follow with respect the land described in the lease.

In September of 1994, the Office of Hearings and Appeals upheld the BLM's orders determining the continuing responsibility of Amax under the potash leases. The ruling left the BLM District Manager's Order of February 4, 1994, in full force and effect. Pursuant to the Office of Hearings and Appeals' ruling, the BLM issued its own "Full Force and Effect" order on December 1, 1994. Amax then filed a Notice of Appeal along with a Petition for Stay Pending Appeal.

An Administrative Judge of the Office of Hearings and Appeals subsequently agreed that due to Amax' "likelihood of success on the merits" on appeal, the BLM's December 1, 2000 order would be stayed.

In December of 1996, Amax and the BLM entered into a Settlement Agreement. The Agreement superseded and replaced the BLM District Manager's orders of February 4, 1994 and December 1, 1994. The Agreement released Amax from all liability under the leases and stated that "[a]cceptance of such release shall not be an acknowledgment by Cyprus Amax of liability as a lessee." See Pl. Ex. 12. The Agreement also acknowledged that Horizon Potash, not Amax, was

3

the "owner, operator, or lessee" of the said leased property. Finally, the Agreement set forth that all outstanding BLM orders directing Amax to provide reclamation were withdrawn.

## II. PROCEDURAL BACKGROUND

On June 6, 1997, Robert F. Kirby and Michael J. Mashaw filed a class action lawsuit in the United States District Court for the District of New Mexico against Cyprus Amax Minerals Company. Kirby and Mashaw filed suit on behalf of themselves and other former employees of the potash mine owned by Horizon Potash. They claimed that Amax, as lessee of federal mineral leases issued by the BLM, was liable for violations pursuant to the Worker Adjustment and Retraining Act (hereinafter "WARN Act"). 29 U.S.C. §2101 *et seq*.[2] Their claim essentially contended that the employees were not given the required sixty day notice of termination under the Act and that they were entitled to wages in equivalent to those sixty days of work as damages.

On September 30, 1998, both the Plaintiffs and the Defendant filed Motions for Summary Judgment. Thereafter, on November 3, 1998, the Court issued its Memorandum Opinion and Order dismissing the complaint with prejudice in favor of Defendant Amax and against Plaintiff employees. The Court concluded that the usual and customary meaning of the word "wages" does not include damages under the WARN Act. Kirby v. Cyprus Amax Minerals Co., USDC No. CIV 97-0779-LCS/LFG.

That ruling was upheld by the Tenth Circuit Court of Appeals in its January 24, 2000 decision. Kirby v. Cyprus Amax Minerals Company, No. 98 Civ. 2341 (10th Cir. Jan. 24, 2000). The Court stated that the "WARN Act applies only to employees. Cyprus Amax cannot be

---

[2] The District Court's jurisdiction was based on a federal question pursuant to 28 U.S.C. §1331 & 29 U.S.C. §2104(5).

considered an employer under the Act, and therefore, cannot be liable to the employees. Congress clearly did not intend to hold a former owner of an entity liable for the inaction of a purchaser. See 29 §2101(b)(1)." Id.

The current action was commenced on July 16, 1999 by an Amended Complaint for Breach of Contract in New Mexico State Court. That action was timely removed to Federal Court on July 27, 1999. (*Doc*. 1). Now Plaintiffs seek damages as a result of the termination of their employment pursuant to the Federal Mineral Leasing Act. 30 U.S.C. §187 *et seq*.

## IV. STANDARD OF REVIEW

Defendant's motion raises a 12(b)(6) motion to dismiss for failure of the complaint to state a claim on which relief can be granted. "A motion to dismiss pursuant to Rule(b)(6) is treated as a Rule 56 motion for summary judgment when premised on materials outside the pleadings, and the opposing party is afforded the same notice and opportunity to respond as provided in Rule 56." Lucero v. Gunter, 52 F.3d 874, 877 (10th Cir. 1995) (citing Hall v. Bellmon, 935 F.2d 1106, 1110-11 (10th Cir. 1991). In the instant case, the Defendant submitted materials outside the pleadings in the form of exhibits. Additionally, the Plaintiff was afforded an opportunity to respond and submitted opposing exhibits in response to the Defendant's motion. Accordingly, if matters outside the pleadings are considered by the Court, the Rule 12(b)(6) motion is treated as a motion for summary judgment and disposed of pursuant to FED. R. CIV. P. 56. FED. R. CIV. P. 12(b)(6).

## IV. ANALYSIS

The underlying issue is one based on the alleged liability of Defendant Amax pursuant to the Federal Mineral Leasing Act. 30 U.S.C. §187 *et seq*. Does Amax have a continuing obligation

to the Plaintiff employees for severance pay because the assignment of mineral leases was never approved by the BLM and the lessee named on the leases was never changed? The Plaintiffs assert that Amax has a continuing obligation towards the employees because the names on the leases were never changed from Amax Potash to Horizon Potash and that the assignment of the leases was never approved by the BLM. Therefore, they claim that Amax is still liable for severance pay pursuant to their obligation under the leases as required by the Federal Mineral Leasing Act. They aver that the severance pay policy within Amax' Corporate Policy Statement affords them severance pay in the event of job elimination and that this severance pay is a separate contractual obligation arising under the potash leases held by Amax.

The governing lease and Act have similar objectives. A primary objective of the Federal Mineral Leasing Act is to protect the leased property and the employees who mine it when there is an assignment of the lease from one owner to the next. The policy of the Act is within the text itself:

> No lease issued under the authority of this chapter shall be assigned or sublet, except with the consent of the Secretary of the Interior. The lessee may, in the discretion of the Secretary of the Interior, be permitted at any time to make written relinquishment of all rights under such a lease, and upon acceptance thereof be thereby relieved of all future obligations under said lease, and may with like consent surrender any legal subdivision of the area included within the lease. Each lease shall contain provisions for the purpose of insuring the exercise of reasonable diligence, skill, and care in the operation of said property; a provision that such rules for the safety and welfare of the miners . . . provision requiring the payment of wages at least twice a month in lawful money of the United States . . ., and for the safeguarding of the public welfare. 30 U.S.C. §187.

The leases at issue, between the BLM and Amax, state similar objectives. They follow the Act's guidelines by containing an "operations and wages" provision that contains the following

provision:

> (*m*) *Operations, wages, and freedom to purchase.*
> [T]he Lessee hereby agrees to pay all wages due miners and employees both above ground and below ground, twice a month in lawful money of the United States. *See* Pl. Ex. 2.

The basis of the Plaintiffs' argument stems from the "payment of wages" requirement in the Federal Mineral Leasing Act. 30 U.S.C. §187. The Mineral Leasing Act requires mineral leases to contain provisions requiring the "payment of wages at least twice a month." The Plaintiffs assert that severance pay is a form of wage or compensation due to the employees for the purpose of aiding them in state of transition where the employees suffer a loss of employment. The severance pay provision disclosing employee rights in the event of job eliminations states:

> 2.2 Separation Due to Reductions in Force, Technology Change or Other Business/Economic Reasons
>
> Employees whose jobs are eliminated or reconstructed as a result of a staff reduction caused by merger, acquisition, divestiture (only applies to personnel that are not offered employment by the acquiring company in a comparable position or salary level. 6.9 does not apply to the employees working for another employer), unit shutdown, departmental consolidation, elimination due to technological change or elimination of position for other similar business reasons are eligible for the provisions of this section.
>
> The provisions of this section were developed to provide uniform and fair treatment to **employees** whose termination is a result of change in business conditions and to recognize that such **employees** deserve consideration when their **employment** is terminated through no fault of their own. To insure this, the Corporate Human Resources Department <u>must</u> review all staff reductions prior to the date such reduction is scheduled to occur. See Def. Ex. A at 3 (emphasis added).

Amax asserts that the employees' complaint is essentially the same issue decided by the Tenth Circuit's opinion in <u>Kirby v. Cyprus Amax Minerals Company</u>, No. 98 Civ. 2341 (10th Cir. Jan. 24, 2000). That Court unequivocally determined that the Plaintiff employees worked for

Horizon Potash not Amax Potash at the time of their termination, and that Amax cannot be held liable to the employees for past wages. Id.

In examining the relevant issues advanced by the Plaintiffs pertaining to the Mineral Leasing Act, the Court agrees with the Defendant's conclusion. In reaching my conclusion, I essentially present three reasons.

First, I believe that the Court of Appeals' decision is clear. The Court concluded that not only was Amax admittedly not the employer at the time the mine closed for purposes of the WARN Act, but that the argument that Amax is still liable for wages because the names on the leases were never changed "is not persuasive." Id. The Court states that the "WARN Act applies only to employers [and thus] Cyprus Amax cannot be liable to the employees." Id. The Court's reasoning is based on Congressional purpose. The opinion emphasized Congress' clear lack of intention "to hold a former owner of an entity liable for the inaction of a purchaser." Id. (citing 29 U.S.C. §2101(b)(1)).

Thus, the Plaintiffs' claims in this action are also without merit.  The Court of Appeals, in its decision, could not have meant to rule on the meaning of "employer" for the purpose of one act and not for the purpose of another. Therefore, the fact that the Plaintiffs are arguing under the Federal Mineral Leasing Act as opposed to the WARN Act is unconvincing.

Second, even if this claim were brought independently of the first claim under the WARN Act, this Court would still find the Plaintiffs argument unconvincing. From a policy perspective, it would seem that the intent behind §187 of the Mineral Leasing Act, is to make sure that employees are paid for their work. The statute states that "[e]ach lease shall contain provisions . . . requiring the payment of wages at least twice a month . . ." 30 U.S.C. §187.

The Plaintiffs do not allege that Amax did not pay them for their services. They allege that Amax is liable for future obligations under the lease. This argument is unpersuasive as well. The statute clearly states that a "lessee may, in the discretion of the Secretary of the Interior, be permitted at any time to make written relinquishment of all rights under such a lease, and upon acceptance thereof be thereby relieved of all future obligations under said lease, and may with like consent surrender any legal subdivision of the area included within the lease . . ." 30 U.S.C. §187.[3] This rationale is also supported by the Court of Appeals' decision in Kirby. There the Court indicated that "[I]mposing damages on a party that had no responsibility or capacity to give notice would serve no statutory purpose, especially because §2104 is 'designed to penalize the wrongdoing employer, [and] deter future violations . . .'" Kirby, No. 98 Civ. 2341 (10th Cir. Jan. 24, 2000). (citing Carpenters Dist. Council v. Dillard Department Stores, Inc., 15 F.3d 1275, 1285 (5th Cir. 1994)).

It is clear to me that the Plaintiffs' claim pursuant to the Federal Mineral Leasing Act, as well as the WARN Act, is unsupportable.

Accordingly, with respect to Plaintiffs' ERISA claim, I find that it is also unsupportable. Even assuming that any attempt to exhaust administrative remedies is futile, the definition of "employer," with respect to employee benefits, is materially the same as an "employer" defined in the Federal Mineral Leasing Act. Therefore, pursuant to the analysis fully discussed above, Cyprus Amax is not considered Plaintiffs' employer pursuant to any ERISA claim.

---

[3]    Furthermore, even if the Plaintiffs posed a valid claim, it has little merit. The fact that the BLM and Amax entered into a settlement agreement stating that Amax would not be held liable under the lease and that Horizon Potash is the owner of the leased property clearly indicates the BLM's acknowledgment. Accordingly, the BLM no longer classifies them as the responsible party with respect to lease obligations. See Pl. Ex. 12.

THEREFORE, IT IS ORDERED that Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted (*Doc.* #20) is GRANTED and this case is DISMISSED.

**IT IS SO ORDERED**.

_____
**LESLIE C. SMITH**
**United States Magistrate Judge**