**United States Court of Appeals for the Tenth Circuit**
OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303)844-3157

Patrick J. Fisher, Jr.
Clerk of Court

Jane B. Howell
Chief Deputy Clerk

FILED
UNITED STATES DISTRICT COURT
NEW MEXICO
JAN 8 2001

January 2, 2002

CLERK

Mr. Robert M. March
Clerk
United States District Court for the District of New Mexico
200 East Griggs Avenue
E-300
Las Cruces, NM 88001

Re:    00-2458, Acosta v. Cyprus Amax Minerals
       Dist/Ag docket:  CIV-99-826-LCS

Dear Mr. March:

    Enclosed for the clerk of the trial court or the named agency, is a certified copy of the order and judgment filed in this case which is issued as the mandate of this court. See Fed. R. App. P. 41(a). Please file it in the records of your court or agency.

    The clerk of the district court is requested to acknowledge receipt of this mandate by file stamping and returning the enclosed copy of this letter. Any original record will be returned to you at a later date.

    Please contact this office if you have questions.

                                    Sincerely,

                                    PATRICK FISHER
                                    Clerk

                                    By: _____
                                        Deputy Clerk

PF:gah

cc:
    W. T. Martin Jr.
    Michael R. Comeau
    Stephen J. Lauer

**F I L E D**
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

**DEC 11 2001**

**PATRICK FISHER**
Clerk

---

GEORGE V. ACOSTA; ELLEN B. BONNEY; WANDA BRICKER; JOHN F. BUHALTS, III; JANE LYNNE BUJAC; FRANK BURNSIDE; VAUGHN E. BURTON; EDWARD H. CARRASCO; FRED COPLEY; ESTATE OF MELVIN R. CONNELL, Deceased; WILLARD L. CORBIN; JEFFREY S. COX; DWAYNE L. DAVIS; S. K. DESAI; COVAN G. DOWNS; DONALD W. DURHAM; MARJORIE SUE EVANOFF; NORMA FERRIS; W. M. FINCHER; DANIEL E. GONZALES; DALE M. GRIFFIN; JOHNY HARRIS; CHRISTOPHER L. HOLMES; ROBERT F. KIRBY; JOHN M. (MITCH); KENNETH KOBER; JAMES L. LEWIS; RONALD D. LYLES; CLINTON E. MARRS; MICHAEL J. MASHAW; PHILIP J. MAXEY; RICHARD MENUEY; JERRY T. MOORE; RAY P. MULLINS; JOE L. NAVARRETTE; JERRY NICHOLS; MONTE R. PATTERSON; HAROLD D. PRATER, JR.; LAWRENCE A. RANDLETT; RALPH J. RAY; KENNEY L. RAYROUX; HAROLD SOWERS; DONALD R. SUGGS; DENNIS H. SCHMIDT; ROBERT TRAVIS SCOTT; KENNETH F. SLATER; BRETT A. SMITH; REBECCA SMITH; STEVE (JOHNNY); WILLIAM A. TRAVELSTEAD; EDDIE J. WALLACE; SHARON WARREN, Widow of Roger Warren; JOHN D. WILLMORE; RUSSELL A. YATES; BRUCE G. YATES,

A true copy

Date

Patrick Fisher
Clerk, U. S. Court of
Appeals, Tenth Circuit

By
_____
Deputy Clerk

|                                  |                                        |
|----------------------------------|----------------------------------------|
| Plaintiffs-Appellants,           |                                        |
| v.                               | No. 00-2458                            |
| CYPRUS AMAX MINERALS COMPANY,    | (D.C. No. CIV-99-826-LCS)<br>(D. N.M.) |
| Defendant-Appellee.              |                                        |

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **MURPHY**, Circuit Judges, and **OBERDORFER**, District Judge.[**]

Plaintiffs, a group of former mine workers, appeal the district court's dismissal of their claims for severance pay from defendant Cyprus Amax Minerals Company. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

In November 1986, Amax Potash Corporation (Amax Potash), a wholly-owned subsidiary of Amax, Inc. (Amax), began operating a potash mine near the city of Carlsbad, in Eddy County, New Mexico. Because federal lands covered portions of the mine, Amax Potash was required to enter into mineral leases with the Bureau of Land

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Louis F. Oberdorfer, United States Senior District Judge for the District of Columbia, sitting by designation.

Management (BLM). Approximately five years later, in February 1992, Amax sold all of the stock of Amax Potash to Horizon Gold Corporation (Horizon Gold), a publicly-held corporation with no affiliation to Amax or any of its subsidiaries. As a result of the purchase, Amax Potash became a wholly-owned subsidiary of Horizon Gold. Horizon Gold changed the name of Amax Potash to Horizon Potash, Inc. (Horizon Potash), and also sought permission from the BLM to transfer or assign the federal mineral leases from Amax Potash to Horizon Potash. In June 1993, Horizon Potash permanently closed the potash mine and laid off the mine employees due to financial difficulties. See Kirby v. Cyprus Amax Minerals Co., 203 F.3d 835, 2000 WL 51799 at *1 (10th Cir. 2000) (unpublished opinion) (noting that Horizon Gold and Horizon Potash "are now bankrupt"). At the time of the closure, the BLM had not approved the request for assignment of the federal mineral leases.

In July 1993, the BLM issued a notice to Amax asserting that, because the assignment of the mineral leases from Amax Potash to Horizon Potash had not been approved, and because Amax Potash was (or at least had been) a wholly-owned subsidiary of Amax, the BLM considered Amax to be responsible for its continuing lease obligations to the United States, including site maintenance and payment of royalties. In particular, the BLM was concerned that Horizon Potash was in violation of several applicable regulatory requirements, including the duty to perform "a minimum level of mine maintenance in order to prevent waste of mineral and non-mineral resources," the

duty to "pay royalties" to the BLM, and the duty to submit production maps to the BLM at the end of each royalty reporting period. App. at 399.

Amax (which became defendant Cyprus Amax Minerals Company in November 1993 as a result of a merger[1]) administratively appealed the BLM's decision. Cyprus Amax and the BLM ultimately settled the dispute in December 1996 but there was no conclusive determination by the BLM of whether Cyprus Amax was liable under the mineral leases. The settlement agreement specifically provided that, "[b]y entering into th[e] . . . agreement, Cyprus Amax does not admit that it is or was liable for the Horizon Potash Mine site or that it is or was an owner, operator or lessee of the federal or state leases or the facilities on privately owned property at the site." Id. at 442. As part of the settlement, the BLM also agreed to officially rescind all orders previously issued, including those asserting that Cyprus Amax was responsible under the mineral leases. Effective July 1, 1998, the BLM officially released Cyprus Amax from "any and all liabilities under the related potash leases." Id. at 452.

In June 1997, two former mine employees (Robert Kirby and Michael Mashaw) filed suit in federal district court against defendant Cyprus Amax claiming that it had violated the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. §§ 2101-2109, by failing to give timely notice of the mine closure. The complaint sought,

---

[1] The names Amax and Cyprus Amax will be used interchangeably throughout the remainder of this order.

on behalf of the named plaintiffs and other former employees of the mine, backpay damages, lost benefits, and attorney fees. The district court certified a class of plaintiffs consisting of workers employed at the mine at the time of closure. Thereafter, however, the district court granted summary judgment in favor of Cyprus Amax. On appeal, this court affirmed the district court's decision, concluding: "Quite simply, the WARN Act applies only to employers. Cyprus Amax cannot be considered an employer under the Act, and therefore, cannot be liable to the employees." Kirby, 2000 WL 51799 at *1.

In June 1999, while the Kirby case was still pending, a group of fifty-one individuals, all of whom were members of the plaintiff class in Kirby, filed suit against Cyprus Amax in the District Court of Eddy County, New Mexico. The complaint, self-described as one for breach of contract, invoked 29 U.S.C. § 1132(a)(1)(B), which allows a beneficiary of an ERISA-governed benefit plan to sue for "benefits due to him under the terms of the plan," and 30 U.S.C. § 187, a provision of the Federal Mineral Leasing Act (FMLA) which imposes certain duties on lessees of federal mineral deposits. According to the complaint, each plaintiff had been a salaried employee at the mine at the time of its closure. The complaint further alleged that, due to Amax Inc.'s continuing responsibility under the FMLA and the federal mineral leases[2] at the time of the mine's closure, it was

---

[2] Each lease included a provision entitled "Operations, wages, and freedom to purchase," which provided, in pertinent part, that the lessee agreed to "pay all wages due miners and employees both above and below ground, at least twice each month in lawful money of the United States." App. at 17 (§ 2(m) of the lease).

responsible for severance pay to each of the plaintiffs pursuant to § 2.2 of its Corporate Policy Statement on Employee Separation (which was issued on April 30, 1987).[3] Cyprus Amax removed the case to federal court. Cyprus Amax filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. The district court granted Cyprus Amax's motion and dismissed the case.

## II.

We review the district court's disposition of plaintiffs' claims de novo. See Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 806 (10th Cir. 1999) (dismissal under either Fed. R. App. P. 12(b)(6) or 28 U.S.C. § 1915(e)(2)(B)(ii)); Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999) (summary judgment). To the extent the district court dismissed plaintiffs' claims for failure to state a claim, we may uphold the dismissal only if we conclude that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Cyprus Amax's motion, and plaintiffs' response thereto, were based in part on documentary evidence. To the extent the district court granted summary judgment on plaintiffs' claims, we may uphold the grant of summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions

---

[3] Section 2.2 of the Corporate Policy Statement provided that "[e]mployees whose jobs [we]re eliminated or restructured as a result of a staff reduction caused by merger, acquisition, divestiture, unit shutdown, departmental consolidation, elimination due to technological change or elimination of position for other similar business reasons [we]re eligible" for severance pay. App. at 7.

6

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

Before addressing the specific arguments asserted by plaintiffs on appeal, it is helpful to review the theory of liability upon which plaintiffs are attempting to proceed. According to plaintiffs, this case "involv[es] the application of the Federal Mineral Leasing Act, 30 U.S.C. § 187 to a severance pay compensation plan under ERISA." App. at 466. More specifically, plaintiffs contend they should be "considered employees of Cyprus Amax for purposes of payment of wages and severance obligations as a result of the requirements of the Federal Mineral Leasing Act and the fact that at all times the [federal mineral] leases remained in Amax's name, not Horizon's." Id. at 468. In other words, plaintiffs argue that "Amax's continuing obligation to see that the Horizon employees were paid wages, because they were mining upon federal lands leased by Amax, triggers the Amax severance plan obligation at such time as those miners permanently lost employment." Id. at 468-69. In sum, plaintiffs argue that "the lessee's [Amax's] severance plan continues for the benefit of the former employees [of the mine] for so long as the lessee continues to be legally obligated to pay wages as lessee of the federal mineral lease upon which the former employees are working." Id. at 470.

In dismissing plaintiffs' complaint, the district court relied heavily on our decision

7

in Kirby. According to the district court, Kirby held "that the Plaintiff employees worked for Horizon Potash not Amax Potash at the time of their termination, and that Amax [could not] be held liable to the employees for past wages." App. at 547-48. The district court concluded that, in deciding Kirby, we "could not have meant to rule on the meaning of 'employer' for the purpose of one act and not for the purpose of another." Id. at 548. Thus, the district court concluded that Kirby, to the extent it concluded that Cyprus Amax was not plaintiffs' employer for purposes of the WARN Act, was likewise binding for purposes of this case and plaintiffs' claims under ERISA and the FMLA. Id. at 548-49.

Plaintiffs present two challenges to the district court's decision. First, plaintiffs contend that the district court erred in applying the holding in Kirby to this case. According to plaintiffs, the doctrine of issue preclusion does not apply because the determination in Kirby that plaintiffs "were not Amax employees under the WARN Act is not relevant to the issues in this case." Pltfs' Br. at 22. Second, plaintiffs contend that, contrary to the conclusion reached by the district court, they should be considered "employees" of Cyprus Amax for purposes of ERISA and Cyprus Amax's severance plan. On this point, plaintiffs simply outline their theory of liability.

Plaintiffs' arguments notwithstanding, we conclude the district court properly relied on Kirby in dismissing this case. Although plaintiffs are correct that the instant action seeks to impose liability on the defendant pursuant to an ERISA plan, whereas the Kirby action sought to impose liability on the defendant pursuant to the WARN Act, there

8

are important similarities between the two cases. It is undisputed that plaintiffs were employees of Horizon Potash, not Amax or any of its subsidiaries, at the time of the mine closing.[4] See Kirby, 2000 WL 51799 at *1 (noting that "Cyprus Amax was admittedly not the employer at the time the mine closed"). Further, plaintiffs attempted to surmount this problem in both cases by use of an identical vehicle: the FMLA and the underlying federal mineral leases. More specifically, plaintiffs attempted in Kirby, and are again trying here, to demonstrate that the requirements of § 187 and the lease provisions regarding regular payment of wages somehow made Cyprus Amax their employer as a matter of law. As the district court recognized, it is inconceivable that this theory could be rejected in Kirby but accepted in this case. Thus, regardless of whether the decision in Kirby is binding on plaintiffs pursuant to the doctrine of issue preclusion (and there is no indication that the district court actually applied that doctrine), it was not error for the district court to rely on Kirby in dismissing this action.

Kirby aside, plaintiffs' theory of liability is clearly flawed. Obviously aware that Cyprus Amax's severance policy applies only to its employees, plaintiffs attempt to shoehorn themselves into this category through the FMLA and the mineral leases. Specifically, plaintiffs argue that, because the BLM never approved the assignment of the mineral leases to Horizon Potash, Cyprus Amax remained liable thereon (as the parent

---

[4] It is uncontroverted that plaintiffs were never employed by Cyprus Amax or its predecessor. Rather, they were employed by Amax Potash, a subsidiary company.

company of Amax Potash) and, pursuant to § 187 of the FMLA and the related lease provisions regarding payment of wages, became their employer as a matter of law. The problem, however, is that even assuming Cyprus Amax was the lessee at the time of the mine closing (which is not at all clear), § 187 and the lease provisions refer only to the regular payment of "wages," and say nothing about severance pay.[5] Moreover, nothing in § 187 or the lease provisions operates to make Cyprus Amax the plaintiffs' employer, or plaintiffs participants under Cyprus Amax's severance pay plan, for purposes of ERISA. See generally 29 U.S.C. § 1002(5) (defining "employer," for purposes of ERISA, as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association or employers acting for an employer in such capacity"); 29 U.S.C. § 1002(7) (defining an ERISA "participant" as "any employee or former employee of an employer . . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan"). Further, plaintiffs neither claim nor attempt to prove there was any type of collusive understanding between Amax and Horizon Gold that the former would sell Amax Potash

---

[5] Black's Law Dictionary defines the term "severance pay" as follows: "Payment by an employer to employee beyond his wages on termination of his employment. Such pay represents a form of compensation for the termination of the employment relation, for reasons other than the displaced employee's misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense the employee for certain losses attributable to the dismissal." Black's Law Dictionary 1374 (6th ed. 1990). In our view, this substantially rebuts plaintiffs' assertion that "severance pay" is equivalent to "wages."

to Horizon Gold in the expectation that the latter would, in short order, bankrupt, thereby relieving both the seller and the buyer from any severance pay or other obligations to plaintiffs. Finally, it is apparent that the lease obligations, as well as any statutory obligations under the FMLA, run solely to the United States. Indeed, the very purpose of the FMLA and the corresponding lease provisions is to protect the government's interest as lessor and landowner. Plaintiffs fail to explain how they, as private parties, are in a position to assert a violation of the lease provisions or the FMLA. Cf. Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 676 (9th Cir. 1998) (concluding that Davis-Bacon Act, requiring federal government work contracts to contain minimum wage stipulations, did not generally grant a private cause of action directly to employees); Davis v. United Airlines, Inc., 662 F.2d 120, 121 (2d Cir. 1981) (concluding Vocational Rehabilitation Act, requiring any federal government contract in excess of $2,500 to contain provision requiring contractor to take affirmative action to employ qualified handicapped individuals, did not create private cause of action).

The judgment of the district court is AFFIRMED.

> Entered for the Court
>
> Mary Beck Briscoe
> Circuit Judge